### UNITED STATES BANKRUPTCY COURT
### NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | Bankruptcy No. 05 B 26651 |
| | ) | Chapter 11 |
| RICHARD G. ARNS, | ) | Judge John H. Squires |
| | ) | |
| Debtor. | ) | |

### MEMORANDUM OPINION

These matters come before the Court on the motion of Richard G. Arns (the "Debtor") for sanctions pursuant to 11 U.S.C. §§ 105 and 524 against LaSalle Bank, NA f/k/a LaSalle Bank, F.S.B., a division of ABN AMRO Mortgage Group, Inc. ("LaSalle Bank"), and on the motion of LaSalle Bank to clarify or modify the order confirming the Debtor's plan of reorganization. For the reasons set forth herein, the Court denies the Debtor's motion for sanctions and grants LaSalle Bank's motion to clarify the order of confirmation to allow it to proceed with its judgment of foreclosure and sale in state court.

### I. JURISDICTION AND PROCEDURE

The Court has jurisdiction to decide this matter pursuant to 28 U.S.C. § 1334 and Internal Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois. It is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (L), and (O).

-2-

## II. FACTS AND BACKGROUND

Most of the facts are undisputed. On July 5, 2005, the Debtor filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code. On September 30, 2005, the Court entered an order converting the Chapter 7 case to a Chapter 11 case.

The Debtor is the owner of real property located in Burr Ridge, Illinois (the "Burr Ridge Property"). LaSalle Bank, a division of ABN AMRO Mortgage Group, Inc., held the first mortgage, dated November 12, 1998, on the Burr Ridge Property. (Debtor Ex. No. 1.) Additionally, the underlying debt was also secured by a security interest in the Debtor's personal property and an interest in all rents from the property. (*Id.*) The mortgage and credit agreement contained a variable interest rate to be paid over thirty years. (*Id.*) Prior to the filing of the bankruptcy case, on July 26, 2004, LaSalle Bank foreclosed the mortgage, resulting in the entry of a judgment of foreclosure in DuPage County, Illinois. (LaSalle Bank Ex. No. 3.)

On January 19, 2006, this Court entered an agreed order continuing the automatic stay as to LaSalle Bank. (Docket No. 58.) On January 30, 2006, the Debtor filed a plan of reorganization (the "Plan"). (Docket No. 59.) Paragraph 5.1 of the Plan provided for the following treatment of the secured claim of LaSalle Bank:

> The [LaSalle Bank] Credit Agreement shall be recast and restructured (the "Restructured Promissory Note"). The Restructured Promissory Note shall be in an amount equal to the outstanding obligation under the Credit Agreement and shall include the principal balance, accrued interest and costs and expenses including legal fees and costs. The Restructured Promissory Note shall be amortized with monthly payments of interest and principal over a twenty-five (25) year term with interest calculated at the rate of seven percent (7%) per annum and an additional monthly real estate tax escrow payment in an amount equal to one twelfth (1/12) of the real estate tax bill for the last

> ascertainable tax year. The Restructured Promissory Note shall
> mature and be due in full three (3) years after the Effective Date.
> The Restructured Promissory Note may be prepaid without
> penalty. The Restructured Promissory Note shall be collateralized
> by a first priority mortgage lien in and against the Burr Ridge
> Property. The Credit Agreement and Mortgage previously granted
> to [LaSalle Bank] shall have the same validity, perfection, and
> enforceability as they had pre-petition without any further action
> by the Debtor or [LaSalle Bank] and without executing or
> recording any financing statements, security agreements, or other
> documents including the Restructured Promissory Note. The
> Debtor shall execute such reasonable documentation as deemed
> necessary by [LaSalle Bank] to document the restructuring in
> accordance with the terms set forth herein. Once [LaSalle Bank's]
> Class 1 secured claim has been paid, in full, [LaSalle Bank] shall
> cause the Mortgage lien to be released and the Credit Agreement
> and any other loan documentation, to be cancelled and surrendered
> as satisfied. The Plan does not provide for any further
> distributions to Class 1 claimants. Class 1 claims are impaired
> under the Plan.

(*Id.*) (footnote omitted).

LaSalle Bank filed an objection to the Debtor's disclosure statement on March 9, 2006.

(Debtor Ex. No. 3.) Throughout March and April, 2006, LaSalle Bank and the Debtor began

conversations about the Debtor's proposed Plan and its treatment of LaSalle Bank's rights under

the mortgage. LaSalle Bank maintains that it discussed with the Debtor its interest in the Burr

Ridge Property, its alleged protection by the anti-modification provision in 11 U.S.C. §

1123(b)(5), and that the Debtor's Plan impermissibly impaired its claim. Furthermore, LaSalle

Bank contends that it entered into a side agreement with the Debtor that it would vote to accept

the Plan as long as LaSalle Bank could go forward with the original judgment of foreclosure in

·4·

the event the Debtor defaulted under the terms of the Plan. The Debtor claims that no such

agreement was entered into and that there is no documentation to confirm that LaSalle Bank could

move forward with the foreclosure in the event of a default under the Plan.

On July 13, 2006, this Court entered a confirmation order (the "Confirmation Order").

(Debtor Ex. No. 5.) The Confirmation Order modified Paragraph 5.1 of the Plan to add the

following provisions:

> (a) The Restructured Promissory Note to [LaSalle Bank] shall be in the amount of $1,026,139.89.

> (b) In the event of a two (2) month default of the monthly payments provided for in the Restructured Promissory Note, [LaSalle Bank] or its attorneys shall give written Notice of Default to the Debtor and the Debtor's attorney that, unless within fourteen (14) days of the mailing of the Notice of Default, [LaSalle Bank] or its attorneys receive evidence of the cure of the default, the Plan injunction shall be immediately modified, without further notice, to permit [LaSalle Bank] to pursue its contractual rights and state remedies with regards to the Burr Ridge Property.

> (c) The Debtor shall maintain hazard insurance on the Burr Ridge Property naming [LaSalle Bank] or its assigns as loss payee and shall, on or before January 15th of each year, transmit to [LaSalle Bank] verification that the annual premium on the hazard insurance policy has been paid. In the event that the Debtor fails to provide such verification or [LaSalle Bank] receives notice of the cancellation of the hazard insurance policy, [LaSalle Bank] or its attorneys shall give written Notice of Default to the Debtor and the Debtor's attorney that, unless within five (5) days of the mailing of the Notice of Default, [LaSalle Bank] or its attorneys receive verification of hazard insurance coverage for the Burr Ridge Property, the Plan injunction shall be immediately modified, without further notice, to permit [LaSalle Bank] to pursue its contractual rights and state remedies with regards to the Burr Ridge Property.

> (d) In the event the Debtor fails to pay the secured claim of [LaSalle Bank], in full, on or before the maturity date of the

·5·

> Restructured Promissory Note, the Plan injunction shall be immediately modified, without further notice, to permit [LaSalle Bank] to pursue its contractual rights and state remedies with regards to the Burr Ridge Property.
>
> The remainder of Paragraph 5.1 shall remain unchanged.

(*Id.*)

In November, 2006, the Debtor defaulted in his payments to LaSalle Bank under the Plan. On December 21, 2006, LaSalle Bank issued a notice of default to the Debtor notifying him that he failed to make the payments as required by the Plan. (LaSalle Bank Ex. No. 1.) On January 10, 2007, LaSalle Bank served notice of the Debtor's failure to comply with the Confirmation Order and notice of default and modification of the automatic stay. (LaSalle Bank Ex. No. 2.) On February 20, 2007, LaSalle Bank served a notice of sheriff's sale in the foreclosure case. (Debtor Ex. No. 8.)

On February 28, 2007, the Debtor filed this motion for sanctions against LaSalle Bank for proceeding with the foreclosure case in willful violation of 11 U.S.C. § 1141 and the terms of the Confirmation Order. (Docket No. 122.) On March 6, 2007, the Court entered an order that stayed LaSalle Bank from proceeding with the sheriff's sale of the Burr Ridge Property. (Docket No. 125.) On May 21, 2007, LaSalle Bank filed its motion to clarify or modify the Order of Confirmation. (Docket No. 136.) Thereafter, on May 24, 2007, this Court held a hearing on the Debtor's motion for sanctions. The only witness to testify was Todd Ruchman, an attorney who represented LaSalle Bank in the Debtor's bankruptcy case. The motion of LaSalle Bank to clarify or modify the Confirmation Order and the Debtor's motion for sanctions were taken under advisement. Thereafter, the Court took the matter under advisement.

-6-

## III. DISCUSSION

### A.    LaSalle Bank's Motion to Clarify or Modify the Confirmation Order

LaSalle Bank requests this Court to clarify or modify the Confirmation Order to the extent necessary to allow it to proceed with completion of the pre-petition judgment of foreclosure and sale. LaSalle Bank claims that it entered into a side agreement with the Debtor and that the added provisions in the Confirmation Order confirm that it retained its lawful right to return to enforce the judgment of foreclosure upon the Debtor's default under the Plan. More specifically, LaSalle Bank claims that its rights in the mortgage and credit agreement are protected by the anti-modification provision in 11 U.S.C. § 1123(b)(5), and that it would not have allowed the Debtor to impermissibly impair its claim without assurance that the Debtor would (1) pay on time and (2) allow LaSalle Bank to retain the right to proceed under the terms of the original judgment of foreclosure.

#### 1.    11 U.S.C. § 1123(b)(5)

Section 1123(b)(5) of the Bankruptcy Code states that a plan may "modify the rights of holders of secured claims, *other than a claim secured only by a security interest in real property that is the debtor's principal residence*, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims|.|" 11 U.S.C. § 1123(b)(5) (emphasis added). Under this statutory provision, if the mortgage at issue is deemed to be secured only by the Debtor's principal residence, the Plan may not modify the rights of the holder of the secured claim.

As noted above, LaSalle Bank included the Debtor's personal property and rents from the property as collateral securing its mortgage on the Burr Ridge Property. (Debtor Ex. No. 1.) A question arises as to whether this claim, secured by an interest in real property that includes the

-7-

Debtor's principal residence *as well as* the Debtor's personal property and rents from the property, is a claim protected by the anti-modification provision in § 1123(b)(5).

The purpose of § 1123(b)(5), added to Chapter 11 by the Bankruptcy Reform Act of 1994, was to equalize the treatment of residential mortgages in Chapters 11 and 13. H.R.REP. No. 103-835, at 46 (1994), *reprinted in* 1994 U.S.C.C.A.N. 3340, 3354. Thus, this Court may look to the treatment of 11 U.S.C. § 1322(b)(2), Chapter 13's analog to § 1123(b)(5), for guidance.

In *In re Jackson*, 136 B.R. 797 (Bankr. N.D. Ill. 1992), the court faced a similar issue: "whether the claim is secured only by the debtor's principal residence due to the pledge of fixtures, apparatus, insurance proceeds and rents under the mortgage instrument." *Id.* at 800. While the court found that with respect to the fixtures and insurance proceeds, the claim was secured only by an interest in the real property used as the debtor's principal residence, the court concluded the following in regards to the rents:

> It is well settled under Illinois law that a mortgagee is not entitled to the rents and profits derived from mortgaged property unless such rents have been expressly pledged under the mortgage documents. Absent such a pledge, the mortgagee will not be entitled to receive rents in the event of default or foreclosure. "The provision in a trust deed, pledging the rents, issues and profits is for the sole purpose of providing a secondary fund or security to protect the mortgagee against loss in the event that upon foreclosure and sale there is a deficiency." It is equally well settled that the mortgagee is not entitled to actually receive rents under such a clause until he takes actual possession or until possession is taken in his behalf by a receiver.
>
> It is clear under these authorities that the pledge and assignment of rents under the mortgage document does convey some equitable rights and security interest in the rents in addition to the real estate itself. The mortgagee may be required to take some additional action to perfect its claim before enforcing such rights or before it will be held accountable for rents accrued during the mortgage

-8-

> term, but the fact remains that there is some property right pledged
> in addition to the real estate under the mortgage. The assignment
> of rents derived from the property does not automatically flow
> from a mortgage on the debtor's principal residence as an incident
> of ownership and thus such an assignment of rents creates an
> additional property right securing the mortgage obligation which
> removes the secured claim from the application of § 1322(b)(2).

*Id.* at 802-03 (citations omitted).

The Court agrees with the reasoning and conclusion of *Jackson*. "By including . . . language which pledged as *additional security* any rents or profits derived from the property, the lender . . . acknowledged that the property may be used for a commercial, income-producing purpose and sought to have its claim secured by such income, if any. This type of secured claim is outside the intended protection of [§ 1123(b)(5)]. . . ." *Id.* at 803.

Moreover, even if the security interest had been initially protected by the anti-modification provision in § 1123(b)(5), the Plan actually modified LaSalle Bank's rights because LaSalle Bank waived those rights by agreeing to the Plan and by its own conduct in not pursuing its objection. *See In re Dominique*, No. 02-50776-BKC-LMI, 2007 WL 1430686, at *7-8 (Bankr. S.D. Fla. May 14, 2007) (stating that although the lender was protected from an alteration of its rights by the debtors' plan under § 1322(b)(2), it could waive those rights by its own conduct).

The Court has addressed what constitutes a waiver and stated in relevant part as follows:

> Under Illinois law, waiver is the intentional relinquishment or
> abandonment of a known right. Before a party is considered to
> have waived a right, "a clear and distinct manifestation of such an
> intent must be found." A waiver may be explicit or implicit. In
> particular, implied waiver requires that an intention to waive be
> plainly inferred from the circumstances and that the waiving party
> make a "clear, unequivocal, and decisive act" indicating such
> waiver. . . .

-9-

> A party to a contract may waive, by express agreement or by its
> course of conduct, its legal right to strict performance of the terms
> of the contract. . . .   Where the evidence regarding a party's
> conduct during the relevant period is undisputed, the court may
> determine waiver as a matter of law.

*In re Tewell*, 355 B.R. 674, 684-85 (Bankr. N.D. Ill. 2006) (citations omitted). *See also In re*

*Kontrick*, 295 F.3d 724, 735 (7th Cir. 2002), *aff'd*, 540 U.S. 443 (2004).

During the hearing on the Debtor's motion for sanctions, Todd Ruchman, the attorney

responsible for reviewing the Debtor's Plan and disclosure statement for LaSalle Bank, admitted

to knowing that the Debtor's Plan would impermissibly modify LaSalle Bank's rights had it been

protected by the anti-modification statute. Nonetheless, Mr. Ruchman testified that he did not

object to the Plan and ultimately voted, on behalf of LaSalle Bank as its attorney and agent, to

accept the Plan. (Debtor Ex. No. 4.) Furthermore, LaSalle Bank admitted in its response to the

Debtor's motion for sanctions that it only allowed the Debtor to change the term length and

interest rate on the Debtor's assurance that he would (1) pay on time and (2) allow LaSalle Bank

to retain the right to proceed under the terms of the original judgment of foreclosure in the event

of a default under the Plan.

Therefore, even if LaSalle Bank's security interest had been initially protected by the anti-

modification provision in § 1123(b)(5), the Court finds a clear and distinct manifestation of

LaSalle Bank's intent to waive its rights under § 1123(b)(5).

## 2.    Clarify or Modify the Confirmation Order?

Despite LaSalle Bank not being protected by the anti-modification provision, the question

still remains whether the Court should clarify or modify the Confirmation Order to the extent

necessary to allow LaSalle Bank to proceed with the pre-petition judgment of foreclosure and

-10-

sale. The Debtor contends that LaSalle Bank must file a new foreclosure action and start that

process all over as a result of confirmation of the Plan and the Debtor's admitted continuing post-

petition confirmation defaults.

Section 1127 of the Code provides the means to modify a confirmed plan. It states that

only the plan proponent or the debtor may modify a plan post-confirmation before substantial

consummation of the plan, which has not occurred here because of the Debtor's default. *See* 11

U.S.C. § 1127(b). *See also In re Longardner & Assocs., Inc.*, 855 F.2d 455, 462 n.8 (7ᵗʰ Cir.

1988). Because LaSalle Bank was neither the debtor nor the Plan proponent, it cannot seek

modification of the Plan.

LaSalle Bank may, however, seek to have the Court exercise its equitable powers to

provide relief in this case. As a court of equity, the bankruptcy court may fashion relief for the

creditor, including reexamining and revising an order that was entered during the pendency of

bankruptcy case. *Id. (citing In re Lintz W. Side Lumber, Inc.*, 655 F.2d 786, 789 (7ᵗʰ Cir. 1981)).

The traditional equity powers of the bankruptcy court were codified by Congress in § 105 of the

Code which states as follows:

> The court may issue any order, process, or judgment that is
> necessary or appropriate to carry out the provisions of this title.
> No provision of this title providing for the raising of an issue by a
> party in interest shall be construed to preclude the court from, sua
> sponte, taking any action or making any determination necessary
> or appropriate to enforce or implement court orders or rules, or to
> prevent an abuse of process.

11 U.S.C. § 105(a). The Seventh Circuit has also acknowledged that the confirmation of a plan

may be revoked pursuant to § 105. *Longardner*, 855 F.2d at 462 n.9 (*citing In re Chinichian*, 784

F.2d 1440, 1442-43 (9ᵗʰ Cir. 1986)). Moreover, the portion of the Confirmation Order discussed

·11·

*surpa*, contained a "drop dead" or "doomsday" provision that this Court enforces. *See In re Bivens*, 317 B.R. 755, 771 (Bankr. N.D. Ill. 2004) (entering a "drop dead" order to provide for the lifting of the automatic stay to allow the creditor to exercise its rights in the debtor's motor vehicle if the debtor defaulted in two or more payments under her Chapter 13 plan or allowed her interest in the vehicle to become uninsured).

LaSalle Bank's purpose for filing the motion to clarify or modify is to allow it to proceed with its original, pre-petition judgment of foreclosure and sale. If such relief is not granted, LaSalle Bank would still have the right to file a new foreclosure action in state court. The Debtor argues that LaSalle Bank's timing of the motion to clarify "makes it clear that LaSalle [Bank] is attempting to avoid the consequences of violating the Confirmation Order. . . ." (Debtor's Resp. in Opp'n to Mot. to Clarify or Modify Order of Confirmation ¶ 2.) The Debtor's argument is disingenuous poppycock. Rather, it is clear to the Court that the Debtor filed his motion for sanctions to shift focus and attention on LaSalle Bank and to avoid the consequences of his material default under the Plan. By tying LaSalle Bank up in the these matters, the Debtor is able to delay foreclosure and live in the residence that he has occupied but failed to pay for since November 2006.

The Court finds the testimony of Mr. Ruchman to be credible. As such, the Court finds that LaSalle Bank and the Debtor entered into a side transaction that allowed LaSalle Bank to retain the right to proceed under the terms of the original, pre-petition judgment in the event that the Debtor defaulted under the Plan. To address what LaSalle Bank mistakenly believed would have impermissibly impaired its claim and to induce it to accept the Plan, the Debtor modified the Plan to include language that in the event of a two-month default, the Plan injunction shall be

-12·

immediately modified, without further notice, to permit LaSalle Bank to pursue its contractual rights and state remedies with regards to the Burr Ridge Property. LaSalle Bank contends that this language, in conjunction with original language in the Plan that provides that the credit agreement and mortgage previously granted to LaSalle Bank will have the same validity, perfection, and enforceability as it had pre-petition, is evidence of the parties' intention to allow LaSalle Bank the right to act according to the pre-petition foreclosure judgment.

The language contained in the Plan and the language added to the Plan through the Confirmation Order is ambiguous as to whether LaSalle Bank retained its right to proceed with the pre-petition foreclosure or must file a new action, as the Debtor argues. It is clear, however, that the Plan intended that LaSalle Bank's lien be treated in a different manner than that of the other two creditors that hold liens on the Burr Ridge Property. This different treatment is evidenced by the language that was only added to LaSalle Bank's treatment and not the class of the other creditors.

Although the Plan is ambiguous as to the pre-petition judgment, the Court concludes that the parties intended, but ultimately failed, to memorialize their side agreement in the Plan. The language in the Plan and the Confirmation Order, together with the testimony of Mr. Ruchman, confirms that the parties entered into a side agreement, and intended to allow LaSalle Bank the right to enforce the judgment of foreclosure and sale in the event that the Debtor failed to adhere to the terms of the Plan. Therefore, the Court grants LaSalle Bank's motion to clarify and will enter an order clarifying the Order of Confirmation to allow LaSalle Bank to proceed with its pre-petition judgment of foreclosure and sale.

-13-

It is undisputed that the Debtor defaulted under the Plan by failing to make payments to LaSalle Bank. It is also undisputed that the Debtor failed to make a timely cure of the default. Thus, the balance of the equities favors LaSalle Bank, not the defaulting Debtor who comes here with unclean hands. The Plan ambiguity should be resolved against the Debtor, the drafter and proponent. A provision could have been inserted in the Plan requiring the dismissal of the pending state foreclosure action without prejudice if that was really intended. To require a new foreclosure action under these facts and circumstances would entail unnecessary additional costs, fees, and expenses and attendant delay. Accordingly, the Court finds that LaSalle Bank may now proceed with its pre-petition judgment of foreclosure.

**B.      The Debtor's Motion for Sanctions Against LaSalle Bank**

The Debtor requests this Court to enter monetary sanctions against LaSalle Bank and enjoin it from proceeding with the pre-petition foreclosure proceeding. Specifically, the Debtor seeks actual damages in the sum of $10,000.00 plus attorneys' fees in the amount of $5,000.00. The Debtor argues that the Plan and Confirmation Order created new and different obligations between the Debtor and LaSalle Bank, and that the continued foreclosure sale was in direct violation of 11 U.S.C. § 1141 and the Confirmation Order. The briefs of both parties display the same reasoning and entertain the same issues of those covered in LaSalle Bank's motion to clarify or modify. It is not necessary to reiterate those same arguments.

As mentioned above, the language in the Plan and the Confirmation Order, together with the testimony of Mr. Ruchman, confirms that the parties entered into a side agreement, and intended to allow LaSalle Bank the right to enforce the judgment of foreclosure and sale in the event that the Debtor failed to adhere to the terms of the Plan. As such, the Court concludes that

-14-

LaSalle Bank's effort to continue its foreclosure sale was warranted and thus, does not rise to the level of sanctionable conduct. Therefore, the Debtor's motion for sanctions is denied.

## IV. CONCLUSION

For the foregoing reasons, this Court grants LaSalle Bank's motion to clarify the Confirmation Order and denies the Debtor's motion for sanctions against LaSalle Bank.

This Opinion constitutes the Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. A separate order shall be entered pursuant to Federal Rule of Bankruptcy Procedure 9021.

**ENTERED:**

DATE: 8/7/7

John H. Squires
United States Bankruptcy Judge

cc: See attached Service List

## SERVICE LIST

### Richard G. Arns
**Bankruptcy No. 05 B 26651**

Gregory K. Stern, Esq.
Monica C. O'Brien, Esq.
Gregory K. Stern, P.C.
53 W. Jackson Blvd., Suite 1442
Chicago, IL 60604

Marc Wagman, Esq.
Michael J. Kalkowski, Esq.
Fisher and Shapiro, LLC
4201 Lake Cook Road
Northbrook, IL 60062

Richard G. Arns
3 Shenandoah Court
Burr Ridge, IL 60527

William T. Neary, United States Trustee
227 W. Monroe Street
Suite 3350
Chicago, IL 60606